# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

| | |
|---|---|
| A&J MANUFACTURING, LLC, and<br>A&J MANUFACTURING, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>FERRELLGAS, L.P., and BLUE RHINO<br>GLOBAL SOURCING, INC.,<br><br>    Defendants. | **Civil Action No. 2:15-cv-00028** |

## DEFENDANTS' MOTION TO CONTINUE STAY

Pursuant to the Court's Order on July 18, 2018, directing the parties to file briefing as to whether this case should remain stayed, Defendants Ferrellgas, L.P. and Blue Rhino Global Sourcing, Inc. (collectively, "Defendants") respectfully move the Court to continue the stay of this case pending the final resolution of the reexamination of U.S. Patent No. 8,381,712 ("the '712 Patent") asserted by Plaintiffs A&J Manufacturing, LLC and A&J Manufacturing, Inc. (collectively, "Plaintiffs").

## I.     STATUS OF THE CASE

Plaintiffs commenced this action on March 2, 2015, alleging infringement of the '712 Patent. (DE 1). Defendants answered on July 31, 2015. (DE 15, ¶ 12). This case was stayed on September 4, 2015, and has remained stayed—including all Rule 26 discovery—since then. While the case has still not progressed beyond the pleadings stage, the status of the case has changed significantly during the stay. First, Defendants permanently stopped selling the accused product in April 2016. As the Court noted, "Plaintiffs represented during both status conferences that the only remaining issue in this case is the amount of damages, because the allegedly infringing products are no longer in production." (DE 53, p. 1). Thus, injunctive relief is not an issue, and the only remedy remaining in this case for Plaintiffs to pursue is an award of money.

Second, the Supreme Court issued its decision in *TC Heartland v. Kraft Foods Grp.*, 137 S. Ct. 1514 (2017), which decision reversed decades of patent venue interpretation. As acknowledged by the Court during the telephonic status conference on July 17, 2018, Defendants have raised their venue defense throughout these proceedings, beginning with their denial as to proper venue in their Answer. (*See* DE 15, ¶ 12).[1]

---

[1] Given the change in controlling patent venue law, and unless Plaintiffs agree to voluntarily dismiss this case for improper venue, Defendants will be forced to pursue their venue defense through further motion practice if the stay is not continued as requested herein.

1

Third, settlement discussions have ended. The parties participated in a Court-assisted settlement conference on November 8, 2017. Defendants further attempted in good faith to engage in settlement discussions with Plaintiffs into 2018. However, Plaintiffs did not exhibit the same level of cooperation or good faith in these discussions. (*See* January 26, 2018 Email Chain, attached hereto at <u>Exhibit A</u>). After struggling to get Plaintiffs to engage with Defendants, Defendants presented Plaintiffs with a framework of options several months ago, only to not hear anything from Plaintiffs until a mere one day before the last status conference with the Court.[2] Regardless of the reasons, as counsel for Plaintiffs informed the Court during the status conference, the parties are at an impasse.

This case is in its earliest stages—no discovery requests have been served, no depositions have been noticed or taken, no claim construction issues have been briefed or ruled upon, no dispositive motions have been filed, no date for filing dispositive motions has been set, and importantly, no trial date has been set. The Court rightfully stayed this case in this nascent stage and, as requested by Defendants, should remain stayed while the USPTO completes its reexamination of the '712 Patent.

---

[2] Plaintiffs, through counsel, informed counsel for Defendants that the parties were at an impasse a mere one day before the telephonic status conference on July 17, 2018, ostensibly because "it appears that Blue Rhino still intends to directly compete with A&J in the grill space, offering competing Dual Fuel grills." (*See* July 17, 2018 Email Chain, attached hereto at <u>Exhibit B</u>). This is the first time Defendants had heard such an argument from Plaintiffs. As Defendants informed Plaintiffs in response, the grill to which Plaintiffs referred is <u>not</u> accused of infringement and is unequivocally beyond the scope of the '712 Patent. (*Id.*). Counsel for Defendants also informed Plaintiffs that the identified grill was <u>not</u> sold by Blue Rhino, as even a cursory review of the Owner's Manual shows that the grill is sold by a nonparty (and has been on sale for five years or more). (*Id.*). Plaintiffs appeared to be grasping at straws to manufacture an explanation for why they ended settlement discussions with Defendants. This exchange also shows that Plaintiffs are attempting to use this litigation for the improper purpose of trying to stifle competition of any kind based on the enforcement of an invalid patent. This is further justification for continuing the stay in this case.

## II.     STATUS OF THE '712 PATENT REEXAMINATION

The status of the reexamination proceeding has also changed significantly during the stay, in a manner that is detrimental to the '712 Patent. The reexamination of the '712 Patent was instituted by the USPTO on July 6, 2016, which found that "[a] substantial new question of patentability affecting claims 1-20 of [the '712 Patent] is raised by the request for *ex parte* reexamination." (*See* Determination – Reexam Ordered, attached hereto at Exhibit C). After fully considering Plaintiffs' arguments and evidence, the USPTO issued its Final Office Action on April 7, 2017, rejecting all Claims 1-20 of the '712 Patent as unpatentable. (*See* Final Office Action, attached hereto at Exhibit D).

In response to the Final Office Action, Plaintiffs filed: (1) a Petition for Withdrawal of Finality of Office Action on April 12, 2017, arguing that the examiner improperly relied on nine new references to support purported new grounds of rejection; (2) a Petition to Vacate the *Ex Parte* Reexamination Order as *Ultra Vires* on May 24, 2017, arguing that Academy violated a duty of candor in filing its reexamination request; and (3) a Request for Reconsideration on June 2, 2017, which Request simply combined, nearly word for word, the arguments set forth in their Withdrawal and *Ultra Vires* Petitions, and requesting reconsideration of the final rejection of the '712 Patent. All three of Plaintiffs' foregoing requests for relief from the USPTO's final rejection of all claims of the '712 Patent have been denied.

On September 7, 2017, Plaintiffs filed their Appeal Brief. Plaintiffs' Appeal Brief is a verbatim copy of their Request for Reconsideration. These same, recycled arguments have already been rejected on multiple occasions. It is unlikely that the Patent Trial and Appeal Board ("PTAB")—which previously found, based on the same prior art and arguments, a reasonable likelihood that at least one claim of the '712 Patent is unpatentable—will find Plaintiffs' arguments

persuasive on appeal.[3]  Moreover, it is statistically unlikely that Plaintiffs' appeal will succeed.[4] Unless Plaintiffs overcome all of these obstacles, the '712 Patent will be canceled and this case will have to be dismissed in its entirety.

Presently, the briefing for Plaintiffs' appeal to the PTAB was completed on February 20, 2018.  According to the most recent PTAB statistics, the average pendency of appeals, from PTAB receipt date to final decision, is **7.6 months**.[5]  Based on these published numbers, the PTAB's decision on Plaintiffs' appeal is expected to be issued around October 2018.

### III.   ALL OF THE RELEVANT FACTORS FAVOR CONTINUING THE STAY

This case is one of four remaining cases pending in this Court involving the same Plaintiffs and patent.  Two of the other three—*A&J Manufacturing, LLC et al. v. Academy, Ltd. et al.*, No. 13-cv-00113 ("*Academy*") and *A&J Manufacturing, LLC et al. v. Rankam Group*, 13-cv-00121 ("*Rankam*")—requested and were granted a stay pending the final resolution of the reexamination of the '712 Patent.  This Court's decision to stay these other cases is consistent with decisions from district courts across the country in similar cases corroborating that a stay is appropriate and

---

[3] This reexamination is the second time a review of the upatentability of the '712 Patent has been instituted.  In March 2015, the PTAB instituted an *inter partes* review of all Claims 1-20 of the '712 Patent, finding that there was a reasonable likelihood that at least one claim is unpatentable based on obviousness.  Before the PTAB could decide the IPR on the merits, it was terminated pursuant to a settlement agreement.

[4] According to the Statistics for *Ex Parte* Appeals published by the PTAB, *ex parte* reexamination decisions are rarely reversed.  Approximately 11% in 2015 (9 out of 82), 17% in 2016 (14 out of 83), 26% in 2017 (16 out of 60), and 35% as of May 2018 (10 out of 28), of reexamination decisions were reversed on appeal to the PTAB.  *See* Receipts and Dispositions, *available at* www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/ptab-statistics-receipts-and-dispositions.

[5] *See* Appeal and Interference Statistics, Patent and Appeal Board, February 2018, *available at* https://www.uspto.gov/sites/default/files/documents/appeal_and_interference_statistics_february __2018.pdf.

justified. Indeed, there are no circumstances present in this action to justify lifting the current stay. All of the relevant factors—"(1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date has been set"—favor continuing the stay of this case. *Graywire, LLC v. Ciena Corp.*, 2009 U.S. Dist. LEXIS 131906, at *9 (N.D. Ga. July 17, 2009).

Even the legislative history establishing reexamination proceedings confirms that this is precisely the type of case that should be stayed pending the final resolution of reexamination. *See Lentek Int'l v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) (noting that "the sponsors of the patent reexamination legislation clearly favored the liberal grant of stays … when patents are submitted for reexamination" and granting stay absent countervailing factors); *see also Emhart Indus. v. Sankyo Seiki Mfg. Co.*, 1987 U.S. Dist. LEXIS 15033, at *5 (N.D. Ill. Jan. 30, 1987) ("In cases which have not progressed beyond … initial litigation stages, the reexamination procedure *should be utilized.*"). The same logic and reasoning for continuing the stays in *Academy* and *Rankam* applies equally, if not even more so, in this case.

Plaintiffs filed the present case against Defendants in 2015, more than two (2) years after initiating litigation against other defendants in this Court over the same '712 Patent. The present case is the last-filed case in Plaintiffs' campaign to enforce the '712 Patent, and it has not progressed any further than the other cases, or even beyond the pleadings stage. *See Graywire*, 2009 U.S. Dist. LEXIS 131906, at *22 (granting stay of case in "early stage of litigation"); *IP Co., LLC v. Cellnet Tech., Inc.*, 2007 U.S. Dist. LEXIS 103980, at *7 (N.D. Ga. Aug. 16, 2007) (granting stay where no discovery conducted yet); *YKK Corp. of Am., Inc. v. Silver Line Bldg. Prods. Corp.*, 2007 U.S. Dist. LEXIS 102592, at *20 (S.D. Ga. May 14, 2007) (granting stay where

5

case was in "nascent stages [as] discovery ha[d] not even begun"). It would not be equitable or just to require this case to proceed while the cases filed two years earlier remain stayed.

Nor have Plaintiffs articulated any compelling reason for proceeding with litigation against Defendants, particularly while the two earlier-filed cases are stayed. The only argument Plaintiffs ever tried to raise to Defendants was some ambiguous contention that a stay somehow impedes the "speed of business". (*See* August 8, 2017 Email Chain, attached hereto at Exhibit E ("The urgency here from A&J's side and prejudice from delay is simply the speed of business.")). This argument is unpersuasive for a number of reasons.

As an initial matter, Defendants are unaware of any case that declined to stay a case pending reexamination because of the "speed of business", whatever that might mean. To the extent Plaintiffs are arguing about some perceived prejudice due to delay, this argument is belied by Plaintiffs' own conduct demonstrating that it is not interested in increasing the "speed of business". Time and again, Plaintiffs have made repeated filings to prolong, rather than expedite, the reexamination proceeding. On December 9, 2016, Plaintiffs filed a Petition for Two-Month Extension of Time to file a response to the USPTO's non-final rejection. On June 28, 2017, Plaintiffs filed a Petition for Extension of Time to File Appeal Brief. On August 17, 2017, Plaintiffs filed yet another Petition for Extension of Time to File Appeal Brief. If Plaintiffs truly were concerned about speed, they would not be moving so slowly at the USPTO. In any event, courts have made it quite clear that "[a]lthough staying [a] case [pending reexamination] would inevitably cause some delay, a stay would neither prejudice the parties nor give one side an unfair advantage." *YKK Corp.*, 2007 U.S. Dist. LEXIS 102592, at *20 (granting stay) (Wood, J.); *see also Barco, N.V. and Barco v. Eizo Nanao Corp.*, 2013 U.S. Dist. LEXIS 193421, at *5 (N.D. Ga. Jan. 4, 2013) (finding delay from reexamination is insufficient for finding undue prejudice and

granting stay); *Southwire Co. v. Cerro Wire, Inc.*, 2009 U.S. Dist. LEXIS 131922, at *8 (N.D. Ga. May 12, 2009) (granting stay where "mere delay does not demonstrate undue prejudice"); *Graywire*, 2009 U.S. Dist. LEXIS 131906, at *16 (N.D. Ga. July 17, 2009) (same); *Unibind Ltd. v. Provo Craft & Novelty, Inc.*, 2009 U.S. Dist. LEXIS 131907, at *5 (N.D. Ga. Feb. 27, 2009) (same); *Wall Corp. v. Bonddesk Group, L.L.C.*, 2009 U.S. Dist. LEXIS 20619, at *4 (D. Del. Feb. 24, 2009) (same); *Photoflex Prods. v. Circa 3 LLC*, 2006 U.S. Dist. LEXIS 37743, at *5 (N.D. Cal. May 24, 2006) (same); *Baxa Corp. v. ForHealth Techs.*, 2006 U.S. Dist. LEXIS 28583, at *8 (M.D. Fla. May 5, 2006) (same).

Moreover, this case is simply about money, not injunctive relief, and "the availability of money damages is sufficient to protect [Plaintiffs] from prejudice." *Tomco2 Equip. Co. v. Southeastern Agri-Systems*, 542 F. Supp. 2d 1303, 1308 (N.D. Ga. 2008) (granting stay). Likewise, the time value of money is remedied by Plaintiffs' request for interest on any judgment. Money damages are the only remedy in play here, and Plaintiffs cannot "point to any prejudice that cannot be remedied by money damages." *Unibind*, 2009 U.S. Dist. LEXIS 131907, at *5 (granting stay and finding no prejudice because money damages were an adequate remedy).

Furthermore, Plaintiffs' opposition to continuing the stay in this case is inconsistent with their earlier promise that they would "stipulate for an extension of the stay in this case only should Blue Rhino consent to a court-mediated settlement session."[6] As the Court is aware, Blue Rhino participated in the Court-ordered settlement conference last November, and then continued discussions with Plaintiffs in good faith into 2018. During the subsequent discussions, Plaintiffs

---

[6] *See* Ex. E ("A&J will state to the court that it will stipulate for an extension of the stay in this case only should Blue Rhino consent to a court-mediated settlement session.") ("A&J will only agree to extend the stay provided that the Court conduct mediation and will tell the court this is its position.").

7

never indicated that they opposed continuing the stay, nor did they show any urgency in either settling the case or continuing with the litigation. As Plaintiffs are well aware, Plaintiffs went silent for long periods of time, never said that their position on the stay had changed, or even informed Defendants that Plaintiffs were ending settlement discussions until months after the last communication from Defendants. It would be fundamentally unfair to lift the stay now under these circumstances.

Plaintiffs seemingly oppose continuing the stay irrespective of the fact it is extremely unlikely that the '712 Patent will survive reexamination. In Plaintiffs' oppositions to the motions to stay in the related cases, Plaintiffs did not once address the likelihood of, or set forth a reasonable argument to support, a reversal by the PTAB of the USPTO's final rejection of the '712 Patent. Instead, Plaintiffs argued that "the '712 patent is fully in force and will remain so unless and until a reexamination certificate issues from the USPTO that cancels all claims of the patent." (*See Rankam*, DE 42, p. 6; *Academy*, DE 40, p. 5). It is precisely this type of argument that compels a continued stay "in order to conserve judicial resources" instead of litigating over an invalid patent. *See Insituform Techs., Inc. v. Amerik Supplies, Inc.*, 2010 U.S. Dist. LEXIS 146946, at *28-29 (N.D. Ga. Mar. 29, 2010) (granting stay pending reexamination); *see also Barco*, 2013 U.S. Dist. LEXIS 193421, at *5 ("[T]he court notes that many other district courts have stayed litigation where claims have been preliminarily rejected in a USPTO proceeding.") (collecting cases); *Graywire*, 2009 U.S. Dist. LEXIS 131906, at *21 (granting stay in view of "judicial economy").

Neither party "would be benefitted by proceeding with [ ] litigation in the face of a statistically significant chance that the claims will be changed or even eliminated by the reexamination proceedings." *Cellnet*, 2007 U.S. Dist. LEXIS 103980, at *8-9 (granting stay). And in view of the current status of the case and reexamination proceeding—including the final

rejection of the '712 Patent, the dire statistics for the '712 Patent before the PTAB, and Plaintiffs' weak arguments on appeal—lifting the stay in this case now "would be a tremendous waste of the time and resources for all those involved." *YKK Corp.*, 2007 U.S. Dist. LEXIS 102592, at *22.

Contrary to what Plaintiffs argued at the status conference, this stay is not indefinite. The reexamination proceedings will come to an end at some point in the near future. Based on current statistics, the PTAB will decide Plaintiffs' appeal in a matter of months. Of course, this assumes that Plaintiffs will not delay things further with additional requests for extensions of time. Defendants have done everything asked of them during the stay to try to resolve this case. It is only right and fair to continue the stay a short while longer while the reexamination proceedings come to a conclusion.

Lifting the stay now would require the parties and the Court to engage in litigation efforts, even though: (1) the '712 Patent has been finally rejected by the USPTO; (2) Plaintiffs have not articulated any good reason for reversal of this final rejection on appeal; (3) two of the other, related cases involving the '712 Patent, which were filed years earlier than the present case against Defendants, have been stayed by this Court; (4) there is no prejudice to Plaintiffs given that the accused conduct ceased years ago; (5) the stay is not indefinite, with current statistics showing that the PTAB should decide Plaintiffs' appeal in a matter of months; (6) continuing the stay will allow for the conclusion of the reexamination proceedings, which have already been shown to have a significant impact on (and are likely to moot entirely) the issues to be considered by this Court without wasting any more time or resources; (7) no formal discovery[7] has taken place and no trial

---

[7] As part of the settlement discussions conducted in conjunction with the Court-ordered settlement conference, Defendants provided to Plaintiffs sales and profit information for the accused products. After learning this information, counsel for Plaintiffs acknowledged that the potential money damages, even if successful, were very low and the numbers did not justify the costs of continued litigation.

9

date has been set, and (8) Plaintiffs previously stated that they would stipulate to a stay, only now to renege on their prior statement to Defendants' detriment.

"[B]oth parties will be prejudiced if the case moves forward and the reexamination results in cancellation or amendment of the patent at issue." *Unibind*, 2009 U.S. Dist. LEXIS 131907, *5-6 (granting stay). Conversely, "[e]ven in the event that the ['712 Patent] survives reexamination unscathed, the Court's resolution of the issues will be facilitated by the expert view of the PTO." *YKK Corp.*, 2007 U.S. Dist. LEXIS 102592, at *21. Accordingly, for the reasons discussed herein and already with the Court, Defendants request that the Court grant their Motion, and continue the stay of this case pending the final resolution of the reexamination of the '712 Patent.

Dated: July 27, 2018                    /s/ J. Mark Wilson

                                                             J. Mark Wilson (*pro hac vice*)
Minnie Kim (*pro hac vice*)
MOORE & VAN ALLEN PLLC
1000 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Telephone: (704) 331-1000
E-mail: markwilson@mvalaw.com
       minniekim@mvalaw.com

Paul M. Scott
Georgia Bar Number: 140960
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
Post Office Box 220
Brunswick, GA 31521-00220
Telephone: (912) 264-8544
E-mail: pscott@brbcsw.com

*Attorneys for Defendants Ferrellgas, L.P. and Blue Rhino Global Sourcing, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented to accept service by electronic means.

Dated: July 27, 2018                                          <u>/s/ J. Mark Wilson</u>