UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

|  |  |  |
|---|---|---|
| **A&J MANUFACTURING, LLC, a**<br>    **a Georgia corporation, and** | ) ) ) | |
| **A&J MANUFACTURING, INC.,**<br>    **a Florida corporation,** | ) ) ) | **Civil Action No. 2:15-cv-00028** |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | |
| **FERRELLGAS, L.P,**<br>    **a Delaware limited partnership, and** | ) ) ) | |
| **BLUE RHINO GLOBAL SOURCING, INC.,**<br>    **A Delaware corporation,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CONTINUE STAY

Plaintiffs A&J Manufacturing, LLC and A&J Manufacturing, Inc. (collectively "A&J")

oppose Defendants Ferrelgas, L.P.'s and Blue Rhino Global Sourcing, Inc.'s (collectively "Blue

Rhino") motion to continue the stay of this suit pending the completion of an *ex parte*

reexamination of the patent in suit in this action, US Patent No. 8,381,712 (the "'712 patent"),

currently occurring before the United States Patent and Trademark Office ("USPTO").  As

grounds for this opposition, the A&J asserts:

1.      On August 21, 2013, A&J filed a complaint with the United States International

Trade Commission ("ITC") (Dkt. No. 17-3, at 5) asserting infringement of the '712 patent by the

importation of multiple-mode grills.  The ITC complaint named 21 respondents but did not name

Blue Rhino because, at the time, A&J was unaware who manufactured the grills that Blue Rhino sold and where the grills were made.  *See generally* Dkt. No. 18-1.

2.      There were numerous parallel patent infringement actions in this Court against the same defendants in the ITC proceeding.  All of those actions were stayed under 28 U.S.C. § 1659 to await a final decision in the ITC proceeding.

3.      On March 2, 2015, A&J filed an action in this Court against Blue Rhino for patent infringement.  Dkt. No. 1.

4.      On July 31, 2015, Blue Rhino filed both an Answer to the Complaint and a Motion to Stay the case expressly for the grounds of a pending IPR of the '712 patent.  Dkt. No. 17.  Blue Rhino requested the stay be ordered through "the resolution of the IPR proceedings at the UPSTO [sic] as Case No. IPR 2015-00056, and any appeal related thereto."  Dkt. No. 17-1, at 4.

5.      The IPR was terminated on December 21, 2015.

6.      On December 29, 2015, after termination of the IPR, the parties here filed a joint status report, agreeing to continue the stay here "pending the final resolution of the appeal before the Court of Appeals for the Federal Circuit involving the patent-in suit..."  Dkt. No. 30.  The parties further stipulated that "the stay in this civil action will be commensurate with what is provided in 28 U.S.C. § 1659, which is the statute governing the stay in the other civil actions involving the patent-on-suit pending in this Court."  Dkt. No. 30.

7.      On June 6, 2016, another respondent in the ITC and defendant litigant in this Court, Academy, Ltd., filed an *ex parte* reexamination against the '712 patent at the USPTO.  Blue Rhino is not a party to that *ex parte* reexamination proceeding.

8.      On March 8, 2017 the ITC proceedings became final.

9.      The ex parte reexamination remains pending at the USPTO, with an appeal of the rejection fully briefed, and awaiting oral argument as of February 20, 2018.  See PAIR docket sheet, Ex. 1 hereto.

10.     A petition to dismiss the appeal, filed December 19, 2017, remains pending in the reexamination. See Ex. 1, yellow highlight.

11.     In a related litigation in this Court, *A&J Manufacturing, LLC v. Rankam VDG Industries, Ltd.*, Case No. 2:13-cv-00121-LGW-RSB, a stay was entered in that action on February 7, 2018, in view that "Defendants submit that, due to recent developments with the USPTO, final resolution of the reexamination proceeding is likely to occur in late September 2018." See Ex. 2.

12.     In their motion to continue the stay, the defendants note that: "[a]ccording to the most recent PTAB statistics, the average pendency of appeals, from PTAB receipt date to final decision, is 7.6 months." Dkt. No. 64, p. 4 (emphasis added).

13.     The receipt date of the present appeal of the reexamination was June 7, 2017. Ex. 1, red highlight.  The appeal has already been pending almost 14 months.

14.     The defendants also state: "[b]ased on these published numbers, the PTAB's decision on Plaintiffs' appeal is expected to be issued around October 2018." Dkt. No. 64, p. 4.

15.     An oral hearing has been requested by A&J in the reexamination.  See **Ex. 1**, green highlight.  The Patent Office will normally docket an oral argument with at least three months' notice to counsel of the setting of the hearing date.

16.     As of August 3, 2018, the date of the printing of the docket sheet of Ex. 1, no hearing date has been set.  Therefore, the oral hearing is not likely to occur in the reexamination until at least the beginning of November, 2018.

17.    In view of a decision being rendered at least several months after the oral hearing, it is very unlikely an opinion would be issued by the Patent Trial and Appeal Board until well into 2019.  If the opinion is adverse to A&J, then a subsequent petition for rehearing, appeal to the Federal Circuit, and potentially petition to the Supreme Court would prevent that negative opinion from being final until well into 2020.

18.    It will be, at least, more than a year before any possible negative opinion from the PTAB cancelling the claims of the '712 patent will be final, and A&J can prevail and have the patentability of the claims confirmed at any stage.

19.    Defendant Ferrellgas, L.P., owns defendant Blue Rhino Global Sourcing, Inc.  A respected financial analyst site states that the probability of bankruptcy for defendant Ferrellgas L.P., within the next two fiscal years is 45%.  See Ex. 3.  The analyst notes that this probability of bankruptcy "is much higher than that of the Energy sector, and significantly higher than that of Industrial Gases industry." *Id.*

## ARGUMENT AND AUTHORITY

Blue Rhino has had this case stayed for an IPR, which has ended, and then for the decision of the ITC becoming final, which has occurred.  Now Blue Rhino wants the stay yet again extended for a recently-filed *ex parte* reexamination that will last, at least, a number of years.  Blue Rhino is simply trying to delay the inevitable and answer for its patent infringement here.

Most of defendant's motion contains vitriol directed at the plaintiff with respect to why settlement discussion failed between them.  This is irrelevant to the issue of whether or not a further stay is warranted in this action in view of the pending reexamination.  All that is relevant about the settlement discussions is that they were unsuccessful and now A&J seeks to have the

stay lifted and the case move forward.

The reexamination itself has been pending for over 2 years.  It is indisputable that the reexamination is years from completion if it is ultimately negative to A&J.  Blue Rhino represents to the Court that finality of the reexamination should occur by October of 2018.  Dkt. No. 64, p. 4.  Blue Rhino points to the stay in the *Rankam* case in view of the same reexamination [Dkt. No. 64, p. 4], yet in that in order granting that stay, the Court relied upon the representation of Rankam that finality date of the reexamination would be September of 2018.  See **Ex. 2**.  Both these claims of the finality date are clearly wrong--the oral hearing has not been docketed, and the pending petition to dismiss has not even been decided.  The appeal itself is already 14 months old, or double the pendency time of the cited statistics by the defendants.  No one can say when the reexamination would likely be final, but it is highly unlikely to occur in 2018.

The continuance of the stay here clearly prejudices A&J, denying it access to judicial relief and the damages it can seek, making A&J wait for an indefinite period where it can only lose.  And there is no guarantee that the defendants will be able to ultimately pay damages if A&J prevails in the future.  Should the court believe a stay is warranted, in view of the tactical disadvantage to A&J from the delay and potential inability for the defendants to ultimately answer for damages here, the Court should have the defendants post an appropriate bond in accord with the Court's inherent power under Fed. R. Civ. P. 62.

A.      **Legal Standard for a Stay**

Courts have the power to stay proceedings pursuant to their inherent authority.  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants."); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-1427 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted).  However, a district court's power to stay cases is not boundless: "A stay that is so extensive that it is 'immoderate or indefinite' may be an abuse of discretion." *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1412, 1416 (1997) (citing *Landis*, 299 U.S. at 257, 57 S.Ct. 163).  Further, "[i]f the stay requested is indefinite, the court must first identify a pressing need for the stay."  *Landis*, 299 U.S. at 255.

Although it is within a district court's discretion to grant a stay for purposes of reexamination, "courts are not required to stay judicial proceedings pending reexamination of a patent."  *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006).  *See Viskase Corp. v. Am. Nat'l Can Co.,* 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution in view of the reexaminations.").  In deciding whether to exercise its discretion, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and whether a trial date has been set.  *Tomco Equip. Co. v. Southeastern Agri-Systems, Inc.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga 2008) (citing *Xerox Corp. v. 3Com Corp., et al.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999).  Here, the "[b]urden is on the party seeking the stay to persuade the court that a stay is appropriate."  *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  Blue Rhino clearly has not met its burden.

## B.    Blue Rhino Has Failed to Meet Its Burden To Prove That a Stay is Either Appropriate  or Warranted.

Blue Rhino request this Court to continue the stay "pending the final resolution of the

reexamination of U.S. Patent No. 8,381,712." Dkt. No. 64, p. 1.  As shown above, the requested

stay would be for, at least, a period of years, and deny A&J access to court for enforcement of its

valid patent.

      As a preliminary matter, each claim of a patent is presumed valid under 35 U.S.C. §282

and may be enforced notwithstanding the presence of a pending reexamination proceeding.  See

*Ethicon v. Quigg*, 849 F.2d 1422, 1428, 7 USPQ2d 1152, 1157 (Fed. Cir. 1988); see also *Viskase*

*Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328, 59 USPQ2d 1823, 1831 (Fed. Cir. 2001); *In re*

*Etter*, 756 F.2d 852, 857, 225 USPQ 1, 4 (Fed. Cir. 1985) (en banc).  Under 35 U.S.C. §307, a

patent is not revised by any amendment or cancellation of a claim made during a reexamination

proceeding <u>until a reexamination certificate is issued</u>.  The decision of the Examiner at the

USPTO here during the initial patent reexamination faces three levels of appellate review: the

Patent Trial and Appeal Board (PTAB); the Court of Appeals for the Federal Circuit, and then

the Supreme Court.  Thus, a reexamination certificate would not issue for the '712 patent until a

writ of certiorari has been ruled upon by the Supreme Court.  See generally *E.I. du Pont de*

*Nemours and Co. v. MacDermid Printing Solutions LLC*, Case No. 10-3409 (D.N.J. July 7,

2016)

> "While a reexamination certificate has not yet been issued, Plaintiff argues that that is so
> only because Defendant, on June 9, 2016, filed a petition for certiorari with the United
> States Supreme Court…In previously considering this issue, the Court held that the stay
> would not be lifted 'until a reexamination certificate is issued.'[citation omitted]   In
> reaching this conclusion, the Court contemplated that appeals would be taken of the PTO's
> decision and the Court intended to afford the parties the ability to utilize the appellate
> process, including a petition for certiorari.  As a result, despite the circumstances presented,
> in accordance with its previous Order, the Court shall not lift the stay until a reexamination
> certificate is issued."

      Thus, the '712 patent is fully in force and will remain so unless and until a reexamination

certificate issues from the USPTO that cancels all claims of the patent.

Firstly, the defendants presume that A&J is certain to lose the '712 patent. But the first round of appellate review has not even occurred. To date, all proceedings in the reexamination have occurred before a single patent examiner. A PTAB appeal is the first opportunity for additional agency review beyond the single examiner. At this level, the USPTO may simply disagree with the patent examiner and uphold the patentability of all claims or raise new grounds of rejection. A&J has presented detailed argument to the PTAB regarding distinctions between the prior art references cited by the examiner. It has also presented evidence of secondary considerations (i.e., objective evidence) of non-obviousness, including factual findings by the ITC that A&J's '712 patent technology experienced commercial success, copying, and meeting a long-felt but unmet need. The examiner's decision in the reexamination is non-binding on the PTAB.  . *See Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789-90 (Del. 2011) (finding that an initial non-final and non-binding action by the USPTO and subsequent reexamination may not narrow the issues in the case or eliminate the need for trial.)

Secondly, this *ex parte* reexamination has already taken years to get to this point, not remotely following the selected statistics cited by the defendants. This reexamination is following the more realistic statistics published by the USPTO where an *ex parte* reexamination process has a historical average pendency of 32.5 months to complete, and that appeals take, on average, another 24 months. *TPK Touch Sols., Inc*, 2013 WL 5289015, at *3. *See Boston Scientific Corp.*, 777 F. Supp. 2d at 789-90 (stating that 2010 ex parte reexamination statistics published by the USPTO demonstrated 25.4 moths for resolution of an ex parte reexamination.)

There would be over 2 more years for appeal from the PTAB before finality should they decide against A&J. Thus, if the Court were to extend the stay as requested, it would potentially be delaying relief for up to **six years** since A&J filed the present. Such a delay is unwarranted.

The stay sought by Blue Rhino clearly would unduly prejudice A&J and deny it access to court to seek the monetary damages it is entitled to.  Just because Blue Rhino no longer make the alleged infringing grills does not mitigate the harm from the delay in the receipt of damages that A&J could otherwise use in the oeration of its business.

### C.      The Defendants Should Be Required to Post a Bond to Continue the Stay

As shown in Ex. 3, there is a reasonable belief that Defendant Ferrellgas, L.P., owner of defendant Blue Rhino Global Sourcing, Inc., may face bankruptcy within its next two fiscal years.  See **Ex. 3**.  Thus, if A&J were forced to wait for the end of the reexamination in which it prevails, it may be unable to obtain damages if the defendants ultimately go bankrupt.  Should the court believe a stay is warranted here, the Court should have the defendants post an appropriate bond in accord with the Court's inherent power under Fed. R. Civ. P. 62.  To not do so would be highly prejudicial to A&J, placing it in a scenario where it could not ultimately collect damages for infringement of the '712 patent by the defendants.

<u>CONCLUSION</u>

For the foregoing reasons, A&J respectfully requests that this Court deny Blue Rhino's request to continue the stay of these proceedings.  If the stay is continued in this case, then A&J requests the Court to order the defendants to post an appropriate bond for the potential damages in this action.


RESPECTFULLY SUBMITTED this 3rd day of August, 2018.

*/s/ Mark D. Johnson*
Mark D. Johnson
Georgia Bar No. 395041
GILBERT, HARRELL, SUMERFORD &
MARTIN, PC
777 Gloucester Street
Suite 200
P.O. Box 190
Brunswick, Georgia  31520
mjohnson@gilbertharrelllaw.com
Telephone:     (912) 265-6700
Facsimile:     (912) 264-3917

Lance D. Reich
Georgia Bar No. 599698
Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154
Telephone:     (206) 689-1144
Facsimile:     (206) 340-0902
lreich@helsell.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CONTINUE STAY** has been served up all counsel of record via the CM/ECF system, this 3rd day August, 2018.


*/s/ Mark D. Johnson*
Mark D. Johnson